UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JULIAN JACKSON | CIVIL ACTION |
|---|---|
| VERSUS | NO: 16-13506 |
| UPS GROUND FREIGHT, INC. | SECTION: "A" (2) |

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 31)** filed by defendant UPS Ground Freight, Inc. Plaintiff Julian Jackson opposes the motion. The motion, noticed for submission on November 15, 2017, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED.

I. **BACKGROUND**

Plaintiff Julian Jackson filed this action against UPS Ground Freight, Inc., his former employer, asserting claims of racial discrimination (African American) and retaliation under Title VII and state law.[1] Jackson began his employment with UPS in April 2006, when he was hired as a driver.

---

[1] Jackson concedes that any claims under state law would be time-barred. Nonetheless, in discrimination cases Louisiana courts follow the same analysis set forth in federal cases. *See Brittain v. Fam. Care Servs., Inc.*, 801 So. 2d 457, 461 (La. App. 2nd Cir. 2001). Thus, in the event that Jackson did not concede all of his state law claims, the analysis under federal law applies with equal force to the state claims. Further, the legal framework governing the Title VII and § 1981 claims is the same. *See Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014) (citing *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007)).

In July 2012, Jackson was terminated by his then-supervisor, Mike Lee (Caucasian).[2] Jackson filed a grievance with the union and a charge of discrimination with the EEOC ("the 2012 EEOC charge").[3] (Rec. Doc. 31-6 at 46). The labor union resolved the claim in Jackson's favor; he was reinstated on October 1, 2012, with back pay. Jackson declined to pursue legal action pertaining to the 2012 EEOC charge even after receiving the right to sue letter.[4]

Jackson contends that after he returned to work in October 2012, he was subjected to constant harassment.

UPS terminated Jackson a second time on December 9, 2014, for insubordination. Jackson filed a charge of discrimination on September 29, 2015, claiming that he had been terminated in violation of Title VII because of his race and in retaliation for the 2012 EEOC charge. (Rec. Doc. 1-2 at 5). The 2015 charge also refers to disparate treatment in favor of white coworkers who were not terminated even after they had acted belligerently and cursed management. Even though Jackson's Complaint is devoted in large part to "constant harassment" allegedly occurring from October 2012 (when he was reinstated) to the date of his termination, the EEOC charge does not refer to problems with a hostile work environment. The EEOC declined the 2015 charge and

---

[2] According to the discharge notice, Jackson was terminated for dishonesty because he failed to report an accident. (Rec. Doc. 31-5 at 46).

[3] Jackson alleged that he had been discriminated against because of his race and retaliated against for speaking out about his employee rights. (Rec. Doc. 31-6 at 46).

[4] Jackson received the right to sue letter from the EEOC on August 14, 2014. Based on that date, Jackson acknowledges that any legal action based on the 2012 EEOC charge would have to have been filed by November 14, 2014. (Rec. Doc. 1, Complaint ¶ 11).

issued a right to sue letter on May 4, 2016. (Rec. Doc. 1-2 at 1). Jackson filed this lawsuit on August 2, 2016.

UPS moves for summary judgment arguing that Jackson cannot demonstrate that race played any role in his termination, that he was subjected to a racially hostile work environment, or that UPS terminated him in retaliation for his prior (2012) EEOC charge.[5]

A jury trial is scheduled to commence on January 29, 2018.

## II.    DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus.*

---

[5] To the extent that factual disputes or discrepancies appear in the evidence, for purposes of this motion UPS accepts Jackson's version of the facts. (Rec. Doc. 31-20 Memo in Support n.1). Of course, a factual dispute will not be material if the conduct as alleged by Jackson does not rise to the level necessary to support a Title VII claim.

*Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

### A. Retaliation

Jackson claims that UPS fired him in retaliation for the 2012 EEOC charge.

Title VII's anti-retaliation provision states in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Title VII claims of unlawful retaliation based on circumstantial evidence are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Vargas v. McHugh*, 630 Fed. Appx. 213, 216 (5th Cir. 2015) (per curiam). First the plaintiff must establish a prima facie case of retaliation by showing

that 1) he participated in an activity protected under the statute; 2) his employer took an adverse employment action against him; and 3) a causal connection exists between the protected activity and the adverse action. *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)). If the plaintiff makes a prima facie showing of retaliation, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Id.* (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)). Finally, the burden shifts back to the plaintiff to prove that the employer's proffered reasons are a pretext for retaliation. *Id.* The employee meets this burden by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

The Supreme Court's *Nassar* decision clarifies that a plaintiff asserting a Title VII retaliation claim must meet a higher standard of causation than a plaintiff claiming Title VII discrimination. *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting *Nassar*, 133 S. Ct. at 2534). Thus, mere proof that retaliation was a "motivating factor" for an adverse employment action will not suffice. Rather, the plaintiff must establish that his protected activity was a "but for" cause of the alleged adverse action by the employer. *Id.* In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)).

Jackson filed the 2012 EEOC charge, which constitutes protected activity, and he

was subsequently terminated from his employment. Jackson must establish a causal connection between the 2012 EEOC charge and his termination in order to complete his prima facie case of retaliatory discharge.

Jackson's entire causation analysis is premised on the theory of temporal proximity, *i.e.*, that the closeness in time of his protected activity and his termination implies a cause and effect relationship.

To establish a prima facie case of retaliatory discharge, the plaintiff may rely on temporal proximity between protected activity and an adverse employment action only if the two are "very close" in time. *Zamora*, 798 F.3d at 335 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Sufficiency of "closeness" is not governed by bright line rules because a time span that suffices in a case with other circumstantial evidence of retaliation may not suffice when the plaintiff has no other evidence of retaliation. *See Feist*, 730 F.3d at 454-55 (citing *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)). Courts in this circuit weigh temporal proximity as part of "the entire calculation" of whether the employee has shown a causal connection between the protected activity and the adverse employment action. *Hague v. Univ. of Tex. Health Science Ctr.*, 560 Fed. Appx. 328, 334 n.7 (5th Cir. 2014) (unpublished) (quoting *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992)).

The Court is persuaded that temporal proximity does not satisfy Jackson's prima facie case of retaliatory discharge under the facts of this case. The 2012 EEOC charge was filed on July 23, 2012, and Jackson was terminated over two years later on

December 9, 2014. These two events are not close enough in time to create an inference of retaliation. Jackson therefore makes a more nuanced temporal proximity argument. Jackson's argument is that the deadline for filing a lawsuit pertaining to the 2012 EEOC charge expired on November 14, 2014, which was less than a month before he was terminated on December 9, 2014. Jackson's position is that these two events are "very close" in time so as to imply a causal connection between them.

Jackson's termination date and the date that the limitation period for pursuing legal action expired are close in time but the one does not imply a causal connection to the other. First of all, as explained in more detail below, the decision to terminate Jackson was made by the Terminal Manager, Thad Theriot, who was not a member of upper management. Assuming arguendo that Theriot knew about the 2012 EEOC charge, which had been filed long before he became Jackson's supervisor, there is nothing to suggest that Theriot knew anything about the right to sue letter that Jackson received much less the implications of that letter to the limitation period for filing a lawsuit. In fact, given that nothing in the record impugns UPS's assertion that Theriot made the decision to terminate Jackson for insubordination, and given that the termination occurred within 24 hours of the offending conduct,[6] any attempt to link the termination to an esoteric legal deadline is far-fetched to say the least.[7]

---

[6] That the offending conduct did occur is undisputed. It is beside the point that Jackson disputes whether his conduct should be considered "insubordination" simply because he felt justified by Theriot's treatment of him, which Jackson considered to be disrespectful. The Court recognizes that Theriot and Jackson do offer differing versions of the argument to some extent, for example Jackson denies that he cursed at Theriot, but those differences are not material.

[7] Jackson's theory is undermined further by the fact that his employment was subject to a

Moreover, the proposition underlying Jackson's position—that UPS continued to employ him for over two years after his reinstatement in order to insulate itself from potential legal action—is not convincing. Jackson filed the 2012 EEOC charge about two weeks after he was terminated in July 2012 and before he was reinstated with back pay in October 2012. Apparently, Jackson never withdrew the EEOC charge but UPS would have reasonably assessed the likelihood of legal action arising from the charge to be unlikely given that the termination decision that formed the basis of the 2012 EEOC charge had been resolved in Jackson's favor. And if UPS had fired Jackson before the limitation period had expired on the 2012 EEOC charge, he would have been required to file a new EEOC charge in order to pursue legal action on that subsequent termination; there is no reason to believe that he would not have done so. In other words, terminating Jackson would lead to legal action (which in fact it did) regardless of when UPS fired him. The suggestion that UPS kept Jackson employed for two years while waiting for the limitation period on the 2012 EEOC charge to expire is unconvincing. Again, the suggestion is even less convincing given that Jackson was fired for cause relating to an incident whose timing UPS could not control.

For all of the foregoing reasons, and given that none of the other surrounding facts suggest retaliation, Jackson's temporal proximity argument fails to support a prima

---

collective bargaining agreement that prevented UPS from terminating him without "just cause," and without progressive discipline except in cases of "extreme seriousness." (Rec. Doc. 31-3 at 36). Therefore, UPS could not terminate Jackson at will before the limitations period for filing a lawsuit had run. There is no indication that UPS was able to manipulate time and space so that the "just cause" incident of "extreme seriousness" (insubordination) that Jackson was involved in would occur after the limitation period for the 2012 charge.

facie case of retaliation.

But even assuming that Jackson satisfied his burden of establishing a prima facie case, he presents no evidence to impugn UPS's non-discriminatory reason for terminating him. Jackson was terminated for insubordination related to an argument that he had with Thad Theriot. It is undisputed that the argument occurred and that Jackson called Theriot a "chump." Jackson has the burden to prove that UPS's proffered reason is a pretext for retaliation. To meet this burden Jackson must show that UPS would not have fired him "but for" his 2012 EEOC charge of discrimination. Jackson has no evidence to create an issue of fact as to pretext. The burden is not on UPS to prove that it fired Jackson for non-discriminatory reasons but rather on Jackson to prove that "but for" his protected activity UPS would not have fired him. The best that Jackson could ever hope to prove is that retaliation had been a motivating factor in the otherwise non-discriminatory reason to terminate him, but post *Nassar* that would not be enough to meet his burden of proof. UPS is entitled to judgment as a matter of law on Jackson's retaliatory discharge claim.

### B. Racial Discrimination

Jackson claims that UPS terminated him due to his race.[8]

UPS contends that it terminated Jackson for a legitimate, non-discriminatory

---

[8] It is not clear from Jackson's Complaint that his Title VII "First Cause of Action" includes a claim that race played a role in the decision to terminate his employment. Moreover, Jackson's opposition states: "This is a hostile work environment and retaliation case." (Rec. Doc. 13 at 40). The Court nonetheless addresses the issue of termination due to race because it is clear from Jackson's deposition testimony that he believes that race played a role in the decision to fire him and his EEOC charge of discrimination includes this claim.

reason—that he was insubordinate to his supervisor Thad Theriot, the terminal manager.

Title VII makes it unlawful for a covered employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Moghalu v. Bd. of Supervisors, Univ. of La. Sys.*, 643 Fed. Appx. 326, 329 (5th Cir. 2016) (unpublished) (quoting 42 U.S.C. § 2000e-2(a)(1)). Liability on a claim that an employer intentionally discharged an employee because of race or national origin, *i.e.*, a "disparate treatment" claim, "depends on whether the protected trait actually motivated the employer's decision." *Id.* (quoting *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015)).

The *McDonnell Douglas* burden-shifting framework applies when a plaintiff relies upon circumstantial evidence to prove a case of unlawful discrimination.[9] *Paske v. Fitzgerald*, 785 F.3d 977, 984 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F3d 408, 411-12 (5th Cir. 2007)). Under this framework, the plaintiff establishes a prima facie case of disparate treatment racial discrimination in employment by demonstrating 1) that he is a member of a protected class, 2) that he was qualified for the position at issue, 3) that he was the subject of an adverse employment action, and 4) that he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v.*

---

[9] Jackson does not contend that he has any direct evidence of racial discrimination by UPS. Therefore, his case is one that relies solely on circumstantial evidence.

*Kansas City So. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009). Once an employee has presented a prima facie case, an inference of intentional discrimination is raised and the burden of production shifts to the employer who must offer an alternative non-discriminatory explanation for the adverse employment action. *Id.* (citing *LaPierre v. Benson Nissan*, 86 F.3d 444, 448 (5th Cir. 1996); *McDonnell Douglas*, 411 U.S. at 802). If the employer can provide a legitimate nondiscriminatory explanation, the inference of discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for racial bias. *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981)). Notwithstanding the burden shifting explained in *McDonnell Douglas*, the burden of proof as to racial discrimination remains with the plaintiff throughout. *Lee*, 574 F.3d at 259 n. 13 (citing *Burdine*, 450 U.S. at 253).

Turning now to Jackson's case, the Court begins by making the observation that this case involves no direct evidence whatsoever of racially offensive behavior of any kind in the UPS workplace. Moreover, Theriot and Jackson are both black males and Theriot made the decision to terminate Jackson. Jackson attempts to inject race into the firing decision by suggesting that Lance Laurent, a white male, actually made the firing decision but the evidence does not support this contention. The evidence does not support the contention that Laurent was a decision-maker on whether to terminate Jackson. Laurent, the Labor Manager for UPS, advises employees regarding the collective bargaining agreement, and Theriot contacted Laurent to confirm his belief that Jackson's conduct constituted "just cause" for termination under the CBA. Just because

Laurent advised Theriot that Jackson's conduct made him susceptible to being terminated does not mean that he made the decision to do so.

Jackson's circumstantial case—both at the prima facie and pretext stages—hinges on the contention that white employees similarly situated to him received more favorable treatment under nearly identical circumstances. The validity of comparator evidence in a Title VII case turns on whether the white employees identified by the plaintiff as comparators were similarly situated to him. Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. *Lee*, 574 F.3d at 259-60 (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)). Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. *Id.* (citing *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)). This is because this circuit requires that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under "nearly identical circumstances." *Id.* (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. *Id.* (citing *Wallace*, 271 F.3d at 221-22; *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101

(5th Cir. 1985); *Okoye*, 245 F.3d at 514).

Critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. *Lee*, 574 F.3d at 260. If the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of the employment discrimination analysis. *Id.* (quoting *Wallace*, 271 F.3d at 221).

"Nearly identical" does not mean "identical" because the plaintiff's burden would be insurmountable in most cases. *Roberts v. Lubrizol Corp.*, 582 Fed. Appx. 455, 459 (5th Cir. 2014) (unpublished) (citing *Lee*, 574 F.3d. at 260). Therefore, the similitude of employee violations may turn on the "comparable seriousness" of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations. *Id.* (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)). Otherwise, an employer could avoid liability for discriminatory practices simply by coding one employee's violation differently from another's. *Lee*, 574 F.3d at 261. But "comparably serious" misconduct only suffices to make two employees similarly situated if their circumstances surrounding the misconduct are "nearly identical." *See Perez v. Tex. Dep't of Crim. Just.*, 395 F.3d 206, 213 (5th Cir. 2004).

Jackson has submitted the testimony of Keith Porter, who claims that he witnessed Darren Bourg, a white employee, cursing Theriot yet to his knowledge Bourg

was not fired.[10] (Rec. Doc. 40-4, Plaintiff's Exhibit B at 17-18). Porter could not remember the details of what had occurred on that occasion and his deposition testimony is equivocal as to whether Bourg was cursing at Theriot in a disrespectful manner, and therefore being insubordinate, or simply cursing while interacting with Theriot. Jackson denies that he cursed while arguing with Theriot. Although the evidence related to Bourg is sketchy to say the least, the Court will assume for the sake of argument that Bourg is a comparator sufficient to create a prima facie case of racial discrimination.

Even if Bourg serves as an appropriate comparator thereby giving Jackson a weak prima facie case of racial discrimination, the inference of discrimination that it carries dissipates with UPS's nondiscriminatory reason for the termination.[11] It is undisputed that Jackson began to argue with Theriot at the loading dock, that the argument escalated, and that Jackson called Theriot a "chump." These facts are not in dispute even though Jackson believes that Theriot objurgated him unfairly. In order to survive summary judgment there must be some indication that the proffered reason is a pretext for racial discrimination. Title VII does not redress seemingly unfair employment decisions unless they are also racially discriminatory, and that's where Jackson fails to

---

[10] Jackson also cites to the deposition testimony of Edward Cooper and John Scoot, Jr. regarding Bourg, but their testimony does not state that they witnessed Bourg being directly disrespectful to Theriot or any other supervisor.

[11] It is important to remain mindful that the employer's burden as to the legitimate, nondiscriminatory reason for terminating the plaintiff is one only of production, not persuasion. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002) (citing *Reeves*, 530 U.S. at 142). This burden is unfettered by any assessment as to credibility. *Id.*

create an issue of fact.

For the foregoing reasons, UPS's motion for summary judgment as to Title VII race discrimination is GRANTED.

### C. Hostile Work Environment

Jackson claims that he was subjected to harassment continuously after returning to work in 2012. Jackson contends that his work environment was hostile because routes were cancelled and he was disciplined repeatedly. In order to be actionable, the harassment must affect a 'term, condition, or privilege' of employment." *E.E.O.C. v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 453 (5th Cir. 2013) (citing *Lauderdale*, 512 F.3d at 162-63). To affect a term, condition, or privilege of employment, the harassing conduct "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* (quoting *Aryain v. Wal–Mart Stores of Tex., L.P.*, 534 F.3d 473, 479 (5th Cir. 2008)).

Jackson's hostile work environment claim fails because he has not demonstrated that any of the alleged harassment was sufficiently severe or pervasive enough so as to alter the conditions of his employment. Thus, regardless of whether Jackson believes that he was ill-used because of his prior EEOC activity or because of his race, his claim fails. As to the hostile work environment claim based on race, Jackson cannot demonstrate that any of the ill treatment that he complains about was related in any way to his race. UPS is entitled to judgment as a matter of law on Jackson's hostile work environment claim.[12]

---

[12] Again, Jackson's claim is that he was subjected to constant harassment after returning to work

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 31)** filed by defendant UPS Ground Freight, Inc. is **GRANTED** and Plaintiff's complaint is **DISMISSED** with prejudice.

December 11, 2017

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

in 2012 following his reinstatement. UPS challenged the timeliness of this claim as to those events that were out-of-time for the 2015 EEOC charge that forms the basis of this lawsuit. Regardless of the timeframe used for evaluating the allegedly harassing conduct, Jackson cannot meet the standards for a Title VII hostile work environment claim.